UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-60522-CIV-DIMITROULEAS

KOVADIS PALMER,

    Plaintiff,
v.

PHILIP MORRIS INTERNATIONAL INC., and
SWEDISH MATCH NORTH AMERICA,
LLC,

    Defendants.
_____/

## ORDER ON DEFENDANT SWEDISH MATCH NORTH AMERICA LLC'S MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant Swedish Match North America, LLC's Motion to Dismiss [DE 25] ("Motion"). The Court has carefully considered the Motion, the Response [DE 27], the Reply [DE 35], the record in this case, the arguments of counsel at the August 19, 2024 hearing, and is otherwise advised in the premises.

**I.  BACKGROUND**

On March 19, 2024, Plaintiff Kovadis Palmer ("Plaintiff" or "Palmer") filed a four-count complaint against Defendants Philip Morris International, Inc. ("PMI") and Swedish Match North America, LLC ("Swedish Match") (collectively, "Defendants") arising out of alleged injuries Plaintiff suffered from using ZYN, an oral nicotine pouch product allegedly manufactured, sold, and advertised by Defendants. *See* [DE 1].

According to the allegations of the Complaint [DE 1]:

Swedish Match is a Virginia limited liability company. [DE 1] at ¶ 8. PMI is a Connecticut corporation incorporated in Virginia that "bought ZYN" in 2022. *Id.* ¶¶ 9, 32. Defendants design,

manufacture, market, advertise, promote, and distribute and sell ZYN in the United States. *Id.* at ¶ 10.

Plaintiff Kelly is a citizen of Florida who began using ZYN when he was 20. *Id.* at ¶¶ 6–7. He was enticed by the flavors and by ZYN's marketing and advertising. *Id.* Plaintiff did not know of ZYN's unreasonably dangerous characteristics when he began using the product. *Id.* at ¶ 7. Plaintiff claims he is addicted to the nicotine contained in ZYN and has suffered personal injuries as a result of his ZYN use. *Id.*

According to Plaintiff, ZYN delivers a potent dose of nicotine and is unreasonably dangerous, and therefore defective, particularly for youth, because it creates and sustains an addiction to nicotine. *Id.* at ¶¶ 20, 32. Plaintiff claims that Defendants falsely maintain that ZYN is a smokeless nicotine replacement therapy from cigarettes or e-cigarettes, despite the nicotine concentration levels in ZYN exceeding the levels found in nicotine replacement therapies. *Id.* at ¶ 21. Plaintiff also claims that Defendants falsely maintain that Zyn is "tobacco-free" even though the nicotine in ZYN is derived from tobacco. *Id.* at ¶¶ 16, 22. ZYN warns on its packaging that "[t]his product contains nicotine. Nicotine is an addictive chemical." *Id.* at ¶¶ 2, 42. Plaintiff claims that this warning is insufficient to communicate the true extent of the dangers posed by ZYN. *Id.* at ¶ 42.

Based upon the foregoing, Plaintiff brings four causes of action against Swedish Match and PMI: strict liability – design defect (Count I); strict liability – failure-to-warn (Count II); negligence (Count III); and fraud (Count IV). Plaintiff seeks compensatory and punitive damages, as well as medical monitoring.

Defendant Swedish Match has now moved to dismiss the Complaint. *See* [DE 25]. Defendant PMI has adopted and joined in Swedish Match's motion to dismiss.[1] *See* [DE 26] at p. 9.

## II.     LEGAL STANDARD

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556).

The Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at 583, 588 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984)).

---

[1] Plaintiff did not object to PMI adopting Swedish Match's motion to dismiss. *See* [DE 27] at p. 2 n.1. Accordingly, though the Court refers to Swedish Match throughout this Order, the Court's rulings with respect to the instant motion apply equally to Plaintiff's identical claims against PMI.

3

### III.     DISCUSSION

Defendant Swedish Match has moved to dismiss the Complaint on several grounds. *See* [DE 25]. First, Swedish Match argues that Plaintiff's failure-to-warn and negligence claims regarding ZYN's labeling and packaging are expressly preempted by federal law, specifically the Family Smoking Prevention and Tobacco Control Act ("TCA"), as those claims seek to require additional warnings beyond those mandated by the United States Food and Drug Administration (the "FDA"). Second, Swedish Match contends that Plaintiff's product liability and negligence claims based on a failure-to-warn theory also fail in light of the well-known addictive nature of nicotine and the prominent, federally mandated nicotine warning. Third, Swedish Match argues that Plaintiff fails to allege a plausible design-defect or negligence claim. Fourth, Swedish Match argues that Plaintiff does plead his fraud claim with the requisite particularity. Finally, Swedish Match maintains that Plaintiff fails to satisfy the standard for medical monitoring relief under Florida law.

For the reasons stated herein, the Court finds that Plaintiff's failure-to-warn and negligence claims regarding ZYN's labeling and packaging are not expressly preempted by the TCA. The Court disagrees with Swedish Match that Plaintiff has failed to plead a failure-to-warn, design defect, or negligence claim. However, the Court agrees with Swedish Match that Plaintiff has failed to sufficiently plead his fraud claim or his request for medical monitoring.

   **A. Whether Plaintiff's Failure-to-Warn and Negligence Claims Concerning ZYN's Labeling and Packaging are Expressly Preempted**

In Count II, Plaintiff brings a strict liability failure-to-warn claim based, in part, on Defendants' alleged failure to include certain warnings on its labeling and packaging. *See* [DE 1] at ¶ 63 ("ZYN is defective because … Defendants failed to warn consumers, including Plaintiff, in ZYN's *labeling, packaging*, and through the marketing, promotion, and advertising of ZYN

….") (emphasis added). In Count III, Plaintiff brings a negligence claim based, in part, on Defendants' alleged failure to provide certain warnings. *Id.* at ¶ 84 (alleging, *inter alia*, that Defendants "fail[ed] to … warn consumers" that "ZYN had not been adequately tested or researched prior to marketing to ensure safety" or "of the dangers associated with ZYN," and "fail[ed] to provide any instructions regarding a safe amount of ZYN to consume in a day"). Swedish Match argues that Plaintiff's failure-to-warn and negligence claims regarding ZYN's labeling and packaging are expressly preempted by the TCA, which bars any state from imposing "any requirement which is different from, or in addition to" the FDA's requirements relating to "labeling." 21 U.S.C. § 387p(a)(2)(A).

In response, Plaintiff argues that his claims are not preempted for four reasons. First, Plaintiff invokes the savings clause in § 387p(b), which provides that the statute shall not be "construed to modify or otherwise affect any action or the liability of any person under the product liability law of any state." 21 U.S.C. § 387p(b). Second, Plaintiff invokes the exception in § 387p(a)(2)(B), which provides that the preemption provision "does not apply to requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, access to, *the advertising and promotion of*, or use of, tobacco products by individuals of any age, or relating to fire safety standards for tobacco products." 21 U.S.C. § 387p(a)(2)(B) (emphasis added). Third, Plaintiff points out that the only labeling requirement identified by Swedish Match is a limited nicotine addiction warning, contained in 21 C.F.R. § 1143.2(a)(1), and therefore Plaintiff's claims are not preempted insofar as they do not concern nicotine addiction. Fourth, Plaintiff argues that his claims are not preempted to the extent they concern "false or misleading" labeling.

The TCA provides, in relevant part:

> (a)(2) Preemption of certain State and local requirements
>
> > (A) In general
> >
> > No State or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products.
> >
> > (B) Exception
> >
> > Subparagraph (A) does not apply to requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, access to, the advertising and promotion of, or use of, tobacco products by individuals of any age, or relating to fire safety standards for tobacco products....

21 U.S.C. § 387p(a)(2)(A). The FDA has promulgated the following labeling[2] requirement, which applies to covered tobacco products[3]: "WARNING: This product contains nicotine. Nicotine is an addictive chemical." 21 C.F.R. § 1143.2(a)(1) the (the "Nicotine Label Requirement"). Because this is the "only relevant area where the FDA has in fact spoken," courts have held that "the only claims subject to express preemption are those that would require labeling that is 'different from or in addition' to" the Nicotine Label Requirement. *See Lara v. Cool Clouds Distribution, Inc.*, No. CV208030SDWLDW, 2021 WL 613842, at *9 (D.N.J. Feb. 16, 2021); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 584 (N.D. Cal. 2020).

> However, the TCA also contains the following savings clause:
>
> (b) Rule of construction regarding product liability
>
> No provision of this subchapter relating to a tobacco product shall be construed to modify or otherwise affect any action or the liability of any person under the product liability law of any State.

---

[2] Labeling is defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m).
[3] Neither party argues that ZYN is not a covered tobacco product.

21 U.SC. § 387p(b) (the "Savings Clause"). Courts have held that this Savings Clause "expressly preserves state law products liability claims." *See In re JUUL Labs*, 497 F. Supp. at 584; *see also Lara*, 2021 WL 613842, at *9. The question thus becomes "how to reconcile a strong preemption provision with an equally strong savings clause." *In re JUUL Labs*, 497 F. Supp. at 587; *see also Lara.*, 2021 WL 613842, at *9.

The Court finds the following answer to this question in a similar case to be thoughtfully and correctly decided:

> This Court finds that rather than express preemption, implied preemption may serve to preclude certain product liability claims that are otherwise "saved" under the Savings Clause. *See id.* at *12, *14 (noting that while plaintiffs dispute whether the analysis previously applied to their labeling claims in *Colgate I* and *Colgate II* extends to failure to warn product liability claims, the Savings Clause ultimately preserves "state authority over [product liability] claims that are not expressly preempted, [such that] the issue becomes one of implied, not express, preemption"); *Natl. Fedn. of the Blind v. United Airlines Inc.*, 813 F.3d 718, 731 (9th Cir. 2016) ("[T]he inclusion of either a saving clause or an express preemption clause within a statutory scheme does not foreclose the application of ordinary implied preemption principles."); *accord In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.*, 959 F.3d 1201, 1213–14 (9th Cir. 2020). Thus, Plaintiff's NJPLA failure to warn claim is not expressly preempted.
>
> Under the implied preemption framework, it is possible that the [Nicotine Label Requirement] could preempt a "saved" product liability claim if a plaintiff seeks to impose a warning or disclosure that addresses nicotine addictiveness *and* either "frustrate[s] Congressional intent" *or* thwarts a defendant's ability to comply with both the federal standard and a state's product liability law. *In re JUUL Labs*, 2020 WL 6271173, at *18; *see Roth*, 651 F.3d at 374.

*Lara*, 2021 WL 613842, at *9–10. The Court adopts this reasoning and finds that Plaintiff's failure-to-warn and negligence claims are not expressly preempted by the TCA but may be impliedly preempted. However, because Swedish Match has not meaningfully argued that Plaintiff's claims are impliedly preempted, the Court will not address implied preemption at this juncture.[4] *See id.*

---

[4] As Plaintiff points out, Swedish Match raises an alternative implied preemption argument in a single sentence contained in a footnote. *See* [DE 25] at p. 5 n.3. Addressing legal arguments in footnotes is an incorrect method to

(declining to consider implied preemption issue "[b]ecause the parties have not briefed this narrow question"). Accordingly, the Court denies Swedish Match's request to dismiss Plaintiff's failure-to-warn and negligence claims on express preemption grounds.

### B. Whether Plaintiff Alleges a Plausible Failure-to-Warn Claim

Even if not expressly preempted, Swedish Match argues that Plaintiff's failure-to-warn claim should also be dismissed because Plaintiff does not plausibly plead that (1) ZYN's existing warnings are inadequate, or (2) any inadequacy proximately caused Plaintiff's alleged injuries. The Court disagrees.

"To state a strict liability failure to warn claim, the plaintiff must plead that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing scientific and medical knowledge available at the time of manufacture and distribution." *Tsavaris v. Pfizer, Inc.*, No. 1:15-CV-21826-KMM, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) (citing *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 602 (11th Cir. 2008)). "This requires the plaintiff to plead the content of the warning label or otherwise describe the manner in which the warning was inadequate." *Id.* The plaintiff must also plead "that the inadequacy of the warning proximately caused his injury." *See Hoffmann-La Roche Inc. v. Mason*, 27 So. 3d 75, 77 (Fla. 1st DCA 2009).

Swedish Match contends that Plaintiff has failed to sufficiently allege how the existing federally mandated warning is inadequate. In response, Plaintiff argues that it pleads eight specific warnings that Defendants failed to give, which necessarily explains how Defendants' existing warning is inadequate. *See* [DE 1] at ¶ 63 (alleging, *inter alia*, that Defendants failed to warn

---

request relief from the Court. *Connor v. Midland Credit Mgmt., Inc.*, No. 18-23023-CIV, 2019 WL 717413, at *4, n. 1 (S.D. Fla. Feb. 20, 2019) (citing *Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580, 2014 WL 5846735, at *2 n.1 (S.D. Fla. Nov. 12, 2014) (not considering argument raised in a footnote); *see also Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 992 (11th Cir. 2010) (deeming argument waived because it was raised only in a footnote)).

consumers that "ZYN is … not intended for persons under 26 years old," "delivers nicotine at greater levels than nicotine replacement therapies" and "[h]ow many ZYN pouches are safe to consume in a day"). Though Plaintiff's pleading could have been clearer, the Court agrees with Plaintiff that this sufficiently identifies what Plaintiff believes was lacking in ZYN's warning.

Swedish Match also raises arguments as to the adequacy of ZYN's existing warning. Specifically, Swedish Match argues that every single ZYN package informs potential purchasers that ZYN "contains nicotine" and that "[n]icotine is an addictive chemical," *see* [DE 1] at ¶¶ 2, 42, and thus any warnings regarding nicotine that Plaintiff complains are missing are subsumed by ZYN's existing warnings, *see id.* at ¶ 63 (alleging that Defendants failed to warn that "ZYN causes, maintains or aggravates nicotine addiction," "is a nicotine delivery device," "increase[s] exposure to nicotine," or is "derived from tobacco"). Swedish Match also contends that it is not required to warn of every risk that could potentially be caused by ZYN. While the Court agrees with the general premise that a manufacturer is not required to warn of every potential risk that could be caused by a product, arguments regarding the adequacy of the warning are better suited for a later stage of the litigation. *See, e.g.*, *Ragans v. Miriam Collins-Palm Beach Labs.*, 681 So. 2d 1173, 1174 (Fla. 2d DCA 1996) ("The adequacy of such a warning is ordinarily a question for determination by the jury."); *Small v. Amgen, Inc.*, 2 F.Supp.3d 1292 (M.D. Fla. 2014) (denying motion to dismiss failure to warn claim, holding that a determination as to the adequacy of the warning is best fit for a later stage of the proceedings); *Montalbano v. Ariad Pharms., Inc.*, No. 15-60508-CIV, 2015 WL 11198245, at *6 (S.D. Fla. Aug. 4, 2015) ("[A] determination of the adequacy of the warning in this case is not well-advised at this 12(b)(6) stage of the litigation, and is better suited for summary judgment or trial.").

The primary case that Defendant relies upon, *Tsavaris*, 2016 WL 375008, at *3, is easily distinguishable because in that case the plaintiff did not even "identify the content of the warnings in question." *Id.* Here, by contrast, Plaintiff has pled the content of the warning label he claims is inadequate. *See* [DE 1] at ¶¶ 2, 42.

Finally, Plaintiff contends that the lack of adequate warnings proximately caused his injuries "because Plaintiff would not have used or purchased ZYN had Plaintiff received adequate warnings and instructions." *See id.* at ¶ 70. The Court finds this allegation sufficient at the motion to dismiss stage to plead proximate causation. Accordingly, the Court denies Swedish Match's request to dismiss Plaintiff's strict liability failure-to-warn claim.

### C. Whether Plaintiff Alleges a Plausible Design Defect Claim

In Count I, Plaintiff brings a strict liability design defect claim against Defendants. To state a claim in Florida for strict products liability based on a design defect, a plaintiff must allege all of the following: "(1) that a defect was present in the product; (2) that it existed at the time the manufacturer parted possession with the product; and (3) that it caused the injuries of which the Plaintiff complains." *Barrow v. Bristol–Myers Squibb,* 1998 WL 812318, at *27 (M.D. Fla. Oct. 29, 1998). Swedish Match argues Count I should be dismissed because Plaintiff has failed to plead a cognizable defect, or a proximate causal connection between any defect and Plaintiff's alleged injuries. The Court disagrees.

In Florida, a plaintiff may establish a design defect under either the consumer expectations test or the risk utility test. *See Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 511 (Fla. 2015). Under the consumer expectations test, a product is defective if it is "dangerous to an extent not contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics." *Cassisi v. Maytag Co.*, 396 So. 2d 1140, 1144 (Fla. 1st

DCA 1981), Alternatively, under the risk utility test, a product is defective if "the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller … and the omission of the alternative design renders the product not reasonably safe." *Aubin*, 177 So. 3d at 505.

Swedish Match argues that Plaintiff has not plausibly pled a design defect claim under either test because Plaintiff has pled only conclusory allegations and ZYN delivers precisely what consumers purchasing a nicotine delivery product expect. The Court disagrees and finds that, under the consumer expectations test, Plaintiff has stated a claim for design defect based on allegations that ZYN delivers a potent amount of nicotine designed to sustain an addiction to nicotine, beyond the expectation of the ordinary consumer. *See* [DE 1] at ¶¶ 20–21, 51. Plaintiff points out that ZYN delivers more nicotine than traditional cigarettes and nicotine replacement therapies while stating that ZYN is a nicotine replacement therapy. *See id.* Thus, despite the inclusion of both the Nicotine Label Requirement and the milligram concentrations per pouch on some products, as reflected in one image in the Complaint, *see id.* at ¶ 2, it remains unclear whether the allegedly higher nicotine potency would be known to the ordinary consumer. Moreover, Plaintiff alleges that ZYN "include[s] features making the product attractive and more palatable to youth and non-smokers," such as flavors, and that Defendants intentionally market its products to youth, who are particularly vulnerable to nicotine's addictive effects. *Id.* at ¶¶ 25–27, 29–30, 35, 48–50, 52–53. Therefore, the ordinary consumer of ZYN, as alleged in the Complaint, includes youth who are less likely to be aware of nicotine's addictive effects. By suggesting that ordinary consumers are unaware of ZYN's increased potency and addictiveness, Plaintiff has alleged enough at the pleading stage to state a strict liability design defect claim. *See, e.g.*, *Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1193 (N.D. Cal. 2018) ("JUUL argues that since the pods contain[] nicotine, a known addictive

11

substance, there cannot possibly be a product defect any more than vodka is defective because it contains alcohol. While this may be true in a general sense, the alleged design defect is not that JUUL's products contain nicotine, it is that they contain more nicotine than users expect."); *Lara*, 2021 WL 613842, at *12.

Finally, Plaintiff alleges that he "was injured as a direct and proximate result of ZYN's defective design as described" in the Complaint and that "[t]he defective design of ZYN was a substantial factor in causing Plaintiff's harms." *See* [DE 1] at ¶ 57. Though somewhat conclusory, Court finds this allegation sufficient at the motion to dismiss stage to plead proximate causation. Accordingly, the Court denies Swedish Match's request to dismiss Plaintiff's strict liability design defect claim.

### D. Whether Plaintiff Alleges a Plausible Negligence Claim

In Count III, Plaintiff brings a negligence claim premised on the same theory of liability as his first two strict products liability claims—that Defendants sold a defective product and failed to adequately warn of the defects. Accordingly, Swedish Match argues that it should be dismissed for the same reasons. For the reasons stated with respect to those claims *supra*, the Court denies Swedish Match's request to dismiss Plaintiff's negligence claim.

### E. Whether Plaintiff Pleads Fraud with Particularity

In Count IV, Plaintiff alleges that Defendants engaged in deceptive marketing techniques, particularly targeted towards minors, that were intended to portray ZYN as "cool and safe alternatives to combustible cigarettes and e-cigarettes" and which misrepresented or omitted key facts concerning ZYN's "nicotine content, addictiveness, flavoring content and safety." [DE 1] at ¶ 92. Among these misrepresentations and omissions include statements that ZYN is "tobacco free," that ZYN is safe and not harmful, and that ZYN contains less nicotine than other nicotine-

based products. *Id.* at ¶¶ 93–96. In its Motion, Swedish Match contends that Plaintiff fails to plead his fraud claim with the particularity required by Rule 9(b).

"Under Florida law, the essential elements of common law fraud are: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1317 (S.D. Fla. 2017) (quoting *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010). "Under Rule 9(b), claims of fraud must be plead with particularity, which means identifying the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S. v. Multinational Def. Servs.*, LLC, 32 F.4th 1298, 1307 (11th Cir. 2022) (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)). "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *W. Coast Life Ins. Co. v. Ruth Secaul 2007-1 Ins. Tr.*, No. 09-81049-CIV, 2010 WL 27907, at *4 (S.D. Fla. Jan. 5, 2010) (quoting *Ziemba v. Cascade Intern., Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001)).

The Court agrees with Swedish Match that Plaintiff's fraud claim does not satisfy Rule 9(b) because Plaintiff fails to specifically identify what advertisements Plaintiff viewed (or the specific contents thereof), when he viewed them, or how they were misleading. Instead, Plaintiff alleges that he began using ZYN around 2019 and "was influenced by ZYN's marketing and advertising," with general references to marketing and advertising that promote ZYN as "tobacco

13

free," safe and not harmful, and which concealed the risks associated with ZYN. *See* [DE 1] at ¶¶ 6–7, 93–96. Such allegations are overly broad, vague, and too indeterminate for purposes of Rule 9(b). *See, e.g., Bailey v. Janssen Pharmaceutica, Inc.*, No. 06-80702-CIV, 2006 WL 3665417, at *6 (S.D. Fla. Nov. 14, 2006) ("The allegation that Johnson & Johnson represented that the patch was 'safe' for the relief of postsurgical pain i[s] overly broad and vague" for purposes of Rule 9(b)), *aff'd*, 536 F.3d 1202 (11th Cir. 2008); *Volinsky v. Lenovo (United States) Inc.*, No. 8:23-CV-00250-KKM-NHA, 2024 WL 1299315, at *8 (M.D. Fla. Mar. 27, 2024) ("[T]he mere suggestion that a fraudulent misrepresentation occurred somewhere on Lenovo's website at some indeterminate time in the year 2019 does not satisfy Rule 9(b) either."); *Colgate*, 345 F. Supp. 3d at 1191 ("Plaintiffs have failed to specifically identify what … advertisements they saw and, as a result, neither I nor [Defendant] can determine precisely what statements were allegedly false, misleading, or unfair."). And because Plaintiff's claims of omission/concealment rely on the same vague references to ZYN's marketing and advertising, the alleged omissions/concealments do not satisfy Rule 9(b) either. *See Milana v. Eisai, Inc.*, No. 8:21-CV-831-CEH-AEP, 2022 WL 846933, at *9 (M.D. Fla. Mar. 22, 2022); *see also Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017) ("The Plaintiffs' claim for fraudulent concealment is subject to the heightened pleading requirements of [Rule 9(b)]."). Accordingly, the Court dismisses Plaintiff's fraud claim for failure to satisfy the particularity requirements of Rule 9(b), without prejudice with leave to amend.

### F. Whether Plaintiff Alleges Entitlement to Medical Monitoring

Finally, Swedish Match argues that Plaintiff's request for medical monitoring must be dismissed because Plaintiff has not pled a standalone claim for medical monitoring. Even if Plaintiff is not required to plead a separate claim for medical monitoring, Swedish Match contends that Plaintiff fails to state a claim for medical monitoring under Florida law.

Florida courts recognize a right to medical monitoring even in the absence of identifiable physical injuries or symptoms. *See Petito v. A.H. Robins Co.*, 750 So. 2d 103, 104 (Fla. 3d DCA 1999). Although some Florida courts refer to medical monitoring as a "cause of action," *see id.* at 105; *Jerue v. Drummond Co., Inc.*, No. 8:17-CV-587-T-17AEP, 2017 WL 10876737, at *14 (M.D. Fla. Aug. 17, 2017), it is unclear whether this tort remedy must be pled as a standalone claim. *See Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1142 n.6 (M.D. Fla. 2021). The Court, however, need not decide whether Plaintiff was required to plead his request for medical monitoring as a separate claim because Plaintiff has failed to sufficiently state a claim for medical monitoring.

> To state a claim for medical monitoring, Plaintiff must plead:
>
> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 640 (Fla. 3d DCA 2006). Here, Plaintiff does not allege all the required elements of a medical monitoring claim. While Plaintiff generally alleges that he was exposed to nicotine by using ZYN and that nicotine users face an "increased risk of cardiovascular, respiratory, and gastrointestinal disorders," *see* [DE 1] at ¶ 40, Plaintiff does not allege that monitoring procedures exist for these disorders, that screening for these disorders is different from that normally recommended in the absence of the exposure, or that a monitoring procedure is reasonably necessary according to contemporary scientific principles. Accordingly, the Court will dismiss Plaintiff's request for medical monitoring without prejudice and with leave to amend.

IV.  **CONCLUSION**

Based upon the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant Swedish Match's Motion to Dismiss [DE 25] is **GRANTED IN PART AND DENIED IN PART.**

2. Plaintiff's Complaint [DE 1] is **DISMISSED without prejudice** as to Count IV and his request for medical monitoring.

3. Plaintiff may file an Amended Complaint consistent with this Order on or before **November 4, 2024**. [5] If Plaintiff does not file an Amended Complaint on or before that date, the Court will assume Plaintiff is proceeding on those claims and requests for relief not dismissed by this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 19th day of August 2024.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:
Counsel of record

---

[5] Because the Court granted jurisdictional discovery as to the personal jurisdiction arguments raised in Defendant PMI's motion to dismiss and the Court's rulings with respect to the instant motion apply equally to Plaintiff's identical claims against PMI, *see* n.1 supra, the Court is setting the amended complaint deadline to fourteen (14) days after the close of jurisdictional discovery.