UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

KOVADIS PALMER,

    Plaintiff,

v.     Case no. 0:24-cv-60522-WPD

PHILIP MORRIS INTERNATIONAL, INC.;
SWEDISH MATCH NORTH AMERICA, LLC;
SWEDISH MATCH USA, INC.;
PHILIP MORRIS GLOBAL BRANDS, INC.; and
PMI GLOBAL SERVICES, INC.;

    Defendants.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS (DOC. 110)**

This Court should deny Defendants' motion to dismiss, filed October 23, 2025 (Doc. 110). The FDUTPA claim is not barred by this Court's rulings on the prior fraud claim because it is based on different allegations. Further, because the claim does not sound in fraud, it is not subject to the pleading requirements of rule 9(b).

**I.     LEGAL STANDARD**

In ruling on a motion to dismiss, this Court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Edwards v. Dothan City Schs.*, 82 F.4th 1306, 1310 (11th Cir. 2023) (cleaned up). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "[T]he plausibility standard is not analogous to a 'probability requirement' . . . ." *Id.* (citation omitted).

1

## II.     ARGUMENT

### A.     The FDUTPA claim is not based on the same allegations as the dismissed fraud claim.

Contrary to Defendants' contention, the FDUTPA claim is not based on the same allegations as the dismissed fraud claim. As demonstrated in Defendants' own exhibit, the language in multiple allegations has changed. Doc. 110-2 at 2–3. What's more, the FDUTPA claim includes new allegations that were not made in the prior complaint:

> 119.   Plaintiff is a "consumer" as defined in section 501.203(7), Florida Statutes.
>
> 120.   Plaintiff purchased Zyn in Florida for personal purposes.
>
> . . . .
>
> 122.   The Swedish Match Defendants, and since the acquisition, all Defendants conducted and continue to conduct "trade or commerce"—as defined in section 502.203(8), Florida Statutes—of Zyn in Florida.
>
> 123.   The Swedish Match Defendants, and since the acquisition, all Defendants violated and continue to violate section 501.204(1), Florida Statutes, by engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices" in Florida.
>
> 124.   The Swedish Match Defendants, and since the acquisition, all Defendants made and continue to make representations, omissions, and practices that are likely to mislead consumers acting reasonably in the circumstances, to the consumers' detriment.
>
> . . . .
>
> 130.   Defendants' representations and omissions were likely to mislead consumers acting reasonably in the circumstances and influence them to purchase Zyn, to the consumers' detriment. Reasonable consumers would likely have been misled that Zyn: (a) is a smoking-cessation device (even though it is not); (b) is a reasonable alternative to combustible or e-cigarettes (even though it is not); (c) is not a potent nicotine-delivery mechanism (even though it is); (d) is not powerfully addictive (even though it is); (e) is healthy and safe (even though it is not); (f) does not pose unreasonable risks of substantial bodily injury resulting (even though it does), and (g) is not derived from tobacco (even though it is).

      131.   Defendants' representations and omissions offended established public policy and were immoral, unethical, oppressive, unscrupulous or substantially injurious to customers.

      132.   Defendants' representations and omissions were made on social media from the time that Plaintiff began using Zyn and have continued to this date.

      133.   Defendants' deceptive or unfair practices allowed and allow Defendants to command a price premium and overcharge customers for Zyn. Defendants' representations and omissions promised a value for Zyn that is higher than what was delivered.

      134.   Plaintiff suffered actual damages by purchasing Zyn at a price more than it is worth. Alternatively, Plaintiff suffered actual damages in the amount that Plaintiff paid for Zyn because Zyn is valueless.

Doc. 108 at 39–41.

Finally, the FDUTPA claim removes many allegations from the fraud claim in the prior complaint. *Compare* Amended Complaint, Doc. 54 at 40–41 ¶¶ 125–26, 128–31; *with* Second Amended Complaint, Doc. 108 at 39–41 ¶¶ 118–35.

    **B.**    **This Court's prior rulings do not preclude the FDUTPA claim.**

Defendants argue that this Court's prior rulings in this case preclude the FDUTPA claim because this Court "has already decided that the complaint's factual allegations do not plausibly state a fraud claim under Rule 9(b)." Doc. 110 at 8. Not so. As explained *supra* § II.A, the FDUTPA claim is not based on the same allegations as the dismissed fraud claim. And, as explained *infra* § II.C, the FDUTPA claim is not subject to rule 9(b).

The cases cited by Defendants are distinguishable:

- *Louis v. Seaboard Marine, Ltd., Inc.*, No. 10-22719-CIV, 2012 WL 13071863, at *1 (S.D. Fla. Feb. 27, 2012) (explaining to a *pro se* litigant that granting leave to amend did not permit the litigant to reassert the same claim);

3

- *Weitz Co. v. Tremco Inc. of Ohio*, No. 10-22409-CIV, 2011 WL 13185725, at *1, 6–8 (S.D. Fla. Mar. 28, 2011) (parties were involved in a prior lawsuit involving the same claims);

- *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1076–81 (9th Cir. 2003) (holding that the plaintiffs' claims in a longstanding environmental dispute involving "eighteen years of litigation" were barred by res judicata because they could have been raised in earlier proceedings);

- *Mack v. LLR, Inc.*, No. EDCV 17-00853, 2019 WL 1873294, at *6 & n.2 (C.D. Cal. Feb. 6, 2019) (after the plaintiffs' claim under California Consumers Legal Remedies Act (CLRA) was dismissed, the plaintiffs filed another CLRA claim);

- *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379–80 (11th Cir. 2024) (addressing "the standards governing Rule 54(b) motions to reconsider").

**C.     The FDUTPA claim does not sound in fraud, so it is not subject to rule 9(b). Nevertheless, rule 9(b) is satisfied.**

The Eleventh Circuit recently held that rule 9(b) applies to a FDUTPA claim only when the claim "sounds in fraud." *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1292–94 (11th Cir. 2025). The court "ha[d] not explored in depth how to determine whether a claim 'sounds in fraud' such that Rule 9(b) applies to the claim." *Id.* at 1294. Answering that question, the court explained that "[t]he most straightforward way of making the determination is by comparing a plaintiff's allegations to the elements of common law fraud." *Id.* "If a plaintiff's allegations closely track the elements of common law fraud, then the plaintiff's claim sounds in fraud for purposes of Rule 9(b)." *Id.* "If not, then Rule 9(b) does not apply." *Id.*

The Eleventh Circuit explained that "[f]raud has no all-embracing definition," but the court nevertheless gave the following definition: "a false representation of a material fact made by one

4

***who knew that it was false***, made to one who did not know that it was false, **with intent to deceive** such person and to influence his action, which did deceive such person and influence his action to his damage." *Id.* at 1294–95 (cleaned up) (emphasis added). As demonstrated in this definition, fraud involves knowledge of the falsity and intent to deceive. *Id.*; *see also, e.g.*, *Devs. Sur. & Indem. Co. v. Bi-Tech Constr., Inc.*, 979 F. Supp. 2d 1307, 1319 (S.D. Fla. Oct. 17, 2013) (Dimitrouleas, J., adopting R&R) ("The elements to establish 'fraud' include (1) a false representation (2) in reference to a material fact (3) *made with knowledge of its falsity* (4) *and with the intent to deceive* (5) with action taken in reliance upon the representation." (emphasis added)); *Fraud, Black's Law Dictionary* (12th ed. 2024) ("A *knowing* misrepresentation or knowing concealment of a material fact *made to induce* another to act to his or her detriment." (emphasis added)).

Plaintiff's FDUTPA claim pleads neither knowledge of the falsity or intent to deceive. Whereas the fraud claim in the prior complaint alleged both knowledge of the falsity and intent to deceive, the FDUTPA claim alleges no such thing. *See* Doc. 110-2 at 2 (noting that the following allegations have been removed: (a) Defendants "created and implemented a plan to generate a market for Zyn and substantially increase sales of Zyn through a pervasive pattern of false and misleading statements and omissions," (b) Defendants "fraudulently and deceptively marketed" Zyn, and (c) Defendants made statements about Zyn they "knew . . . to be untrue").

Contrast this with the claim in *Pop*, which the Eleventh Circuit held sounded in fraud. The plaintiff in *Pop* alleged that a swimwear company, Luli Fama, paid "significant monies" to social media influencers to advertise its products, and both Luli Fama and the influencers failed to disclose the payments. *Id.* at 1289–90, 1295. This was necessarily a knowing nondisclosure

5

because a person does not pay or receive "significant monies" without knowing about it. Here, by contrast, the FDUTPA claim does not allege any knowledge of falsity.

The plaintiff in *Pop* also alleged that "both Luli Fama and the [i]nfluencers *devised a scheme* in which the influencers tag or recommend Luli Fama products, *pretending* they are disinterested and unaffiliated consumers." *Id.* at 1290 (emphasis added). And he alleged that "failing to disclose the payments to the influencers was 'a large part of Luli Fama's *strategy*' to '*disguise* [the influencers'] advertising as honest consumer recommendation'; in other words, the defendants' deception was *intentional*." *Id.* at 1295 (emphasis added). Here, by contrast, the FDUTPA claim does not allege any intentional deception.

Finally, the complaint in *Pop* "stated twice that the defendants engaged in 'fraud.'" *Id.* at 1295. The plaintiff further "*concede[d] on appeal* that his complaint's 'statement of facts include[d] fraudulent acts.'" *Id.* (emphasis added) Here, by contrast, Plaintiff makes no such concession. And although one paragraph in the second amended complaint's statement of facts uses the word "fraudulent," *see* Doc. 108 ¶ 52, that was mistakenly carried over from the prior complaint and Plaintiff does not wish to include it. The same is true of the isolated use of the words "purposefully" and "strategy" in the statement of facts. Doc. 108 ¶¶ 48, 57.

As Defendants note, only one district court decision has applied *Pop*. Doc. 110 at 12 (citing *Multiphone Latin Am. Inc. v. Millicom Int'l Cellular S.A.*, No. 25-23249-CIV, 2025 WL 2480412 (S.D. Fla. Aug. 28, 2025)). That decision is not helpful because it does not discuss the allegations of the complaint. *See Multiphone*, 2025 WL 2480412 at *7. The decision notes only that "the claim centers on allegations of deception — specifically, that Defendant made 'material misrepresentations during contract negotiations and performance *about its commitment to the partnership*.'" *Id.* (emphasis added). In any event, like *Pop*—and unlike here—*Multiphone*

6

appears to concern a knowing deception: a member of a partnership necessarily knows about its own "commitment to the partnership." *Cf. id.*

Defendants also cite *Altamonte Pediatric Associates, P.A. v. Greenway Health, LLC*, No. 8:20-CV-604-T-33JSS, 2020 WL 5350303 (M.D. Fla. Sept. 4, 2020), which predates *Pop* and is nevertheless distinguishable. There, a healthcare provider wanted software that qualified for a federal program. *Altamonte*, 2020 WL 5350303, at *1. The defendant represented that its software satisfied the requirements of the program. *Id.* In fact, however, the defendant had run tests on its software and the tests failed. *Id.* The defendant had even settled a claim by the government that it was "intentionally rigg[ing] the software to cheat on testing during the certification process." *Id.* Again, like *Pop*—and unlike here—this indicates that the claim in *Altamonte* involved knowledge of the falsity and intent to deceive.

Contrary to Defendants' contention, Plaintiff does not argue that the allegations must "*exactly* track the elements of common-law fraud" for rule 9(b) to apply. Doc. 110 at 14. Instead, as the Eleventh Circuit explained in *Pop*, where the "plaintiff's allegations *closely track* the elements of common law fraud, then the plaintiff's claim sounds in fraud for purposes of Rule 9(b)." 145 F.4th at 1298 (emphasis added). "If not, then Rule 9(b) does not apply." *Id.*

Defendants' reading of *Pop* would have rule 9(b) apply any time a claim asserts a misrepresentation of fact. Perhaps that is a simpler test, but it is not the test adopted by the Eleventh Circuit. If the Eleventh Circuit wanted to adopt such a test, it certainly would have said so.

Precedent from outside the Eleventh Circuit—and cited in *Pop*—supports Plaintiff's argument. Specifically, the Eleventh Circuit cited the Seventh Circuit's decision in *Kahn v. Walmart, Inc.*, 107 F.3th 585 (7th Cir. 2024), as an example of how courts have applied rule 9(b) to other states' consumer protection statutes. *Pop*, 145 F.4th at 1293. In *Kahn*, the district court

applied rule 9(b) to the plaintiff's claims because the claims were premised on the defendant's "alleged concealment of the actual prices of its items." 107 F.4th at 601–02. The Seventh Circuit disagreed that rule 9(b) applied, emphasizing that the plaintiff's claims were "not necessarily premised on *intentional* deception." *Id.* at 602 (emphasis added); *see also id.* (distinguishing a prior decision because it involved an alleged "intent to deceive"). Here, too, Plaintiff's FDUTPA claim does not allege intentional deception.

Finally, to the extent rule 9(b) applies, it is satisfied. The "who" is satisfied because Plaintiff alleges that "Defendants" made the representations and omissions. Doc. 108 ¶¶ 123–31. The "what" is satisfied because Plaintiff specifies the representations and omissions that Defendants made and the complaint includes examples of such advertisements. *Id.* ¶¶ 2–6, 48, 53, 124–31. The "when" and "where" are satisfied because the complaint alleges that "Defendants' representations and omissions were made on social media from the time that Plaintiff began using Zyn and have continued to this date." *Id.* ¶ 132. And the "how" is satisfied because the complaint explains how consumers were likely to be misled and what Defendants gained. *Id.* ¶¶ 130, 133.

Plaintiff recognizes that this Court previously ruled that Plaintiff must identify "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" Doc. 48 at 13. However, Plaintiff wishes to preserve the argument that he need not identify which specific advertisements he viewed, the specific contents thereof, or the specific time he viewed them. "[B]y definition, Plaintiff[] cannot point to one particular statement because an *omission* is a non-statement." *In re Takata Airbag Prods. Liab. Litig.*, 464 F. Supp. 3d

1291, 1303 (S.D. Fla. 2020). "Claims based on an omission can succeed without the same level of specificity required by a normal fraud claim" because "a plaintiff alleging an omission-based fraud will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim." *Hadjian v. Mercedes-Benz, USA, LLC*, No. 1:21-CV-00469, 2022 WL 3699603, at *8 (N.D. Ga. Mar. 31, 2022) (cleaned up); *see also Nalley v. Gen. Motors LLC*, No. 1:21-cv-04174, 2022 WL 18459646, at *5 (N.D. Ga. Aug. 30, 2022) (ruling that the plaintiff sufficiently pleaded the "what" by alleging that "[the defendant] knew of the [defect with the product], but failed to disclose it").

### III.   CONCLUSION

This Court should deny Defendants' motion to dismiss, filed October 23, 2025 (Doc. 110). The FDUTPA claim is not barred by this Court's rulings on the prior fraud claim because it is based on different allegations. Further, because the claim does not sound in fraud, it is not subject to the pleading requirements of rule 9(b).

**SCHLESINGER LAW OFFICES, P.A.**

*/s/ Jeffrey L. Haberman*
**Jeffrey L. Haberman**
Florida Bar no. 98522
jhaberman@schlesingerlaw.com
**Scott P. Schlesinger**
Florida Bar no. 444952
scott@schlesingerlaw.com
**Jonathan R. Gdanski**
Florida Bar no. 32097
jgdanski@schlesingerlaw.com
1212 SE Third Avenue,
Fort Lauderdale, FL 33316
Telephone: (954) 467-8800
*Attorneys for Plaintiff*
